UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANNY THOMAS DUNLAP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00112-SEB-KMB |
| | ) | |
| DAVID PLATT, | ) | |
| JASON SERVIZZI, | ) | |
| KEITH HARTZEL, | ) | |
| DONALD EMERSON, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Denying Motion for Summary Judgment as to Exhaustion Defense
and Providing Notice of Intent to Grant Summary Judgment
Independent of the Motion**

Plaintiff Danny Dunlap filed this action contending that his constitutional rights were violated when he was exposed to asbestos at Plainfield Correctional Facility ("Plainfield"). Originally, he sued Defendants Defendant David Platt, Jason Servizzi, and Keith Hartzel. Dkt. 8. They asserted but then withdrew an exhaustion defense. Dkt. 23. Later, Mr. Dunlap was given leave to amend his complaint to add claims against Defendant Donald Emerson, who took over as warden at Plainfield after Mr. Dunlap filed his suit. Dkt. 54. He alleges that Warden Emerson is also responsible for exposing him to asbestos. *Id.* Warden Emerson moves for summary judgment, arguing that Mr. Dunlap failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before bringing claims against him. For the reasons explained below, the motion, dkt [69], is **DENIED.** In addition, the Court **notifies** Warden Emerson of its intent to grant summary judgment for Mr. Dunlap on the exhaustion issue.

# I.
## Summary Judgment Standard

Parties in a civil dispute may move for summary judgment, a way to resolve a case short of a trial. See Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute over any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the materials cited by the parties, see Fed. R. Civ. P. 56(c)(3); it need not "scour every inch of the record" for evidence that could be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

# II.
## Factual Background

### A. Grievance Process

At all times relevant to the claims in this suit, Mr. Dunlap was incarcerated at Plainfield, a prison within the IDOC. The IDOC has a standardized grievance process that was in place during the time Mr. Dunlap alleges his rights were violated. Dkt. 71-1 ¶ 6; dkt. 71-2. Inmates are told about the process during their orientation at Plainfield. Dkt. 71-1 ¶ 7.

IDOC Policy and Administrative Procedures 00-02-301, Offender Grievance Process is the IDOC policy governing the grievance procedure and details how a prisoner must exhaust his administrative remedies. Dkt. 71-2. During the relevant period, the grievance process consisted of three steps: (1) submitting a formal grievance following unsuccessful attempts at informal resolutions; (2) submitting a written appeal to the facility Warden/designee; and (3) submitting a written appeal to the IDOC Grievance Manager. *Id.* at 3.  Successful exhaustion of the grievance process requires timely pursuing each step or level of the process. Dkt. 71-1 ¶ 22. The grievance policy identifies several "Matters Appropriate to the Offender Grievance Process," including, as relevant here, "Actions of individual staff, contractors, or volunteers" and "Any other concerns relating to conditions of care." Dkt. 71-2 at 3.

## B. Mr. Dunlap's Allegations, Procedural History, and Mr. Dunlap's Attempt at Exhaustion

In his original complaint, Mr. Dunlap alleged as follows: Defendant Platt ordered inmate workers to pull up the gym floor at Plainfield, which had the effect of distributing debris in the gym, where other inmates regularly took recreation. This situation persisted from November 2021 to May 2022. After another inmate's family members complained about the debris, the prison brought in an outside contractor, August Mack Environmental, Inc., to test for asbestos in the recreation building. August Mack confirmed that asbestos was present in amounts above the OSHA safety limit and instructed the facility as to how to dispose of the asbestos. The recreation building was shut down the first week of June 2022. Dkt. 2.

Mr. Dunlap filed a grievance about exposure to asbestos in the gym on June 14, 2022, which was assigned Grievance Number 142264.[1] Dkt. 20-1 at 1. This is the only grievance Mr.

---

[1] Warden Emerson does not mention this grievance in his summary judgment motion, but Mr. Dunlap filed a copy earlier in the case, dkt. 20-1, and Warden Emerson's summary judgment materials show the status Grievance Number 142264 as "closed," dkt. 71-3. In his response brief, Mr. Dunlap argued,

Dunlap ever filed about asbestos exposure at Plainfield. Dkts. 71-3. 71-4; His grievance was denied

on June 20, 2022, with the grievance specialist stating:

> We have all the proper documentation retained at the facility with regard to the
> asbestos cleanup in the recreation area. As soon as the facility was made aware of
> the problem, the signs were posted and all entry to the area was denied.

Dkt. 20-1 at 2. Mr. Dunlap appealed on June 27, stating that it was insufficient to clean only the

gymnasium because people who had been in the gymnasium were bringing asbestos into the

dorms. *Id.* at 3. Then-warden Tricia Pretorius denied the appeal on June 28. *Id.* Mr. Dunlap filed a

second-level appeal on June 30. *Id.* The Offender Grievance Manager denied that appeal on June

30, stating, "I concur with the Facility level responses. Upon being alerted to the issue appropriate

action was taken by the facility in response." *Id.* at 4.

In his original complaint, Mr. Dunlap further alleged as follows: The gym remained closed

for several months after June 2022. In November 2022, a veteran's event was scheduled for the

gym. The day before the event, inmates discovered asbestos tiles underneath the bleachers, which

meant that Defendants Platt, Hartzel, and Servizzi failed to follow August Mack's instructions for

remediating the asbestos. In addition, during the remediation process, Defendants did not follow

quarantine procedures or require linen replacements for recreation workers. Dkt. 2.

---

"Plaintiff Dunlap demonstrated for the Court around August/September 2023, that he completed the
IDOC/IYC Grievance process . . . . Plaintiff did not need to name Defendant Emerson in another grievance
or even file another one for the same Eighth Amendment claim . . . ." Dkt. 73 at 6, 8 (cleaned up). In reply,
Warden Emerson again failed to acknowledge the existence of this grievance, instead objecting that Mr.
Dunlap failed to properly cite any evidence in his response brief. *See* dkt. 76 at 1–2. To the extent that
Warden Emerson is asking the Court to ignore the grievance materials Mr. Dunlap filed earlier in the case,
it will not do so. Although Mr. Dunlap did not provide a precise docket citation to the materials in his
response brief, he provided enough information for Warden Emerson's counsel and the Court to find them—
namely, that they were filed with the Court in August/September 2023. *See* S.D. Ind. Local Rule 56-1(e)
("The citation [to evidence connected with a summary judgment motion or response] must refer to a page
or paragraph number or *otherwise similarly specify where the relevant information can be found in the
supporting evidence.*" (emphasis added)). In addition, even without a citation, Warden Emerson's counsel
certainly knew about the grievance because the materials attached to his summary judgment brief list
Grievance 142264 among Mr. Emerson's previous grievances.

Mr. Dunlap filed his complaint in January 2023, suing Defendants Platt, Hartzel, and Servizzi based on the above allegations. *Id.* At some unspecified date after that, Warden Emerson became the new warden of Plainfield. In May 2024, Mr. Dunlap was granted leave to amend to add claims against Warden Emerson. Dkt. 54. Those claims are based on the following allegations: After Warden Emerson took over, the recreation building was closed for around two weeks starting on August 2, 2023, and then again on August 21, 2023. At the direction of Warden Emerson, an outside contractor was called in to assist maintenance staff with removal of the remaining asbestos from the recreation building. But rather than follow August Mack's instructions for remediating the asbestos, Warden Emerson followed the recommendations of Defendants Servizzi, Hartzel, and Platt, such that no quarantine measures were put in place, maintenance staff did not wear proper attire, and there were no linen exchanges for inmates. Mr. Dunlap spoke with Warden Emerson about the asbestos problem, and Warden Emerson made false promises about properly cleaning the recreation building according to OSHA regulations. As of the writing of the amended complaint, there were still asbestos and asbestos contaminated materials at Plainfield. Mr. Dunlap asserts that Warden Emerson's failure to ensure that the asbestos was properly remediated amounts to deliberate indifference. Dkt. 55.

### III. Discussion

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules

dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "Because exhaustion is an affirmative defense," Warden Emerson faces the burden of establishing that "an administrative remedy was available and that [Mr. Dunlap] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

It is undisputed that Mr. Dunlap fully exhausted the single grievance he filed about asbestos exposure—Grievance Number 142264. The only question is whether exhausting that grievance was sufficient to exhaust his claims against Warden Emerson, who did not become warden of Plainfield for some time after the grievance was resolved. The Court concludes that it was.

As Warden Emerson recognizes in his reply, if an inmate is suffering due to an ongoing prison condition, he "need not file multiple, successive grievances raising the same issue." *Turley v. Rednour,* 729 F.3d 645, 650 (7th Cir. 2013). For example, in *Turley*, the plaintiff alleged that his prison's lockdown policy—which led to repeated lockdowns over the course of more than two years—violated the Eighth Amendment. *Id.* at 650. The defendants argued that he failed to exhaust administrative remedies because he only mentioned two specific lockdowns in the grievances he filed. The Seventh Circuit rejected that argument, reasoning:

> In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing. Separate complaints about particular incidents are only required if the underlying facts or the complaints are different. Thus, once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement. Here, Turley's complaints centered around continuing prison policies, including allegedly illegal lockdowns, and one occurrence of notice from Turley was sufficient to give the prison a chance to correct the problems.

*Id.*

The logic of *Turley* applies to Mr. Dunlap's claims. He is complaining about an ongoing condition at Plainfield—the presence of dangerous amounts of asbestos. He filed and fully exhausted a grievance about that issue, which provided Plainfield with notice of, and an opportunity to correct, the problem. Thus, his grievance satisfied the purpose of the exhaustion requirement. He did not need to keep filing grievances about the prison's ongoing failure to remedy the initial problem.

Although Warden Emerson acknowledges that inmates need file only one grievance about ongoing prison conditions, he fails to explain why Mr. Dunlap's claims fall outside that rule. Instead, he asserts:

> [I]f an inmate's complaint in a lawsuit concerns the conduct of a particular individual, a grievance must give the prison "proper notice of his claim" against that individual. *King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023) (concluding that inmate did not exhaust claim that officer delayed access to medical care where grievance only complained about conduct of medical staff).

> Here, Plaintiff's lawsuit does concern the conduct of Defendant Emerson, yet he failed to file a grievance giving the facility proper notice of his claim against Defendant Emerson. (Dkt. 71-4). A prisoner's grievance must give prison officials a fair opportunity to address the prisoner's complaint—that is, the grievance must raise the same claim as the lawsuit and provide enough information to indicate that the defendant is the target. *See King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023); *Bowers v. Dart*, 1 F.4th 513, 517–18 (7th Cir. 2021). Here, Plaintiff fails to provide any evidence to dispute that he did not file a grievance on any asbestos related complaint in August of 2023 or specific behavior of Defendant Emerson related to the allegations in Plaintiff's complaint before filing this lawsuit. Thus, Plaintiff failed to exhaust his administrative remedies before filing his lawsuit against Defendant Emerson.

Dkt. 76 at 5.

But Mr. Dunlap is not complaining about "the conduct of a particular individual." He is complaining about an ongoing condition of his confinement, as the IDOC's grievance policy allows him to do. Neither *King* nor *Bowers* involved an ongoing condition of confinement, so they are

not relevant here.[2] Under *Turley*, a plaintiff need not file multiple grievances about an ongoing prison condition and need only file another grievance if the "underlying facts or complaints are different." 729 F.3d at 650. Warden Emerson fails to explain why the underlying facts or complaints against him are different from the facts and complaints raised in Mr. Dunlap's fully exhausted grievance. Indeed, he does not acknowledge the existence of that grievance at all. He bears the burden of establishing his exhaustion defense and has failed to do so. Accordingly, his summary judgment motion must be **denied**.

### IV. Rule 56(f) Notice and Further Proceedings

For the reasons stated above, Warden Emerson's motion for summary judgment, dkt. [69], is **denied**.

Further, under Rule 56(f)(1), the Court gives Warden Emerson notice of its intent to grant summary judgment in Mr. Dunlap's favor on the issue of exhaustion. Warden Emerson shall have **through May 15, 2025,** to show cause why summary judgment should not be granted. Alternatively, Warden Emerson may withdraw his affirmative defense by this date.

**IT IS SO ORDERED.**

Date:    4/22/2025

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[2] In *Bowers*, the plaintiff's complaint centered on jail staff's failure to intervene to protect him during an attack by other inmates, but the Seventh Circuit found that he had not exhausted that claim because his grievance focused only on jail staff's failure to transfer him before the attack despite knowing of threats against him. 1 F.4th at 516, 518. In *King*, the plaintiff filed a grievance stating that jail correctional staff sent him to the hospital and complaining that medical staff delayed in getting him medical care. In his lawsuit, however, he sued a correctional officer based on allegations that the officer failed to promptly get him medical care. The Seventh Circuit found that he had not exhausted that claim because the grievance did not suggest that correctional staff delayed his medical care and did not identify the defendant as responsible. 63 F.4th at 604, 608.

Distribution:

DANNY THOMAS DUNLAP
114840
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Stephanie Michelle Davis
Office of Attorney General Todd Rokita
stephanie.davis@atg.in.gov

Katherine A Meltzer
Office of Indiana Attorney General
katherine.meltzer@atg.in.gov